Our first case this morning is Tony Hall v. Shinseki. Mr. Carpenter, may I please the court? Mr. Carpenter, appearing on behalf of Tony Hall. This matter involves a question of regulatory interpretation, specifically the provisions of 38 CFR 3.304-F3, and in particular whether or not those provisions are applicable when there is an allegation of in-service sexual assault. Well, that section says veterans fear of hostile military and terrorist activity. Have you alleged any fear of hostile military or terrorist activity? Yes, Your Honor. How so? Mr. Hall alleged that he was sexually assaulted by his superior while serving in the military. We believe that that meets the definition and the prerequisites for application of 3.304-F3. Well, tell me how. Does that fall under hostile military activity or hostile terrorist activity? Hostile military activity. It was a member of the military who imposed his will on an inferior service member, resulting in a sexual assault. That is, we believe, consistent with the intent of the regulation. But when you have another regulation that deals with sexual assaults, don't we go there? Not necessarily, Your Honor. I mean, it's in the same section. It's two paragraphs down. It is, Your Honor. But, quite frankly, that provision is not as liberal as this provision is. And this provision applies specifically to incidents that happen in service that are related to a hostile military activity. That's the terrorism? No, that's the hostile military activity. It does not have anything to do with terrorism. Well, if a sexual assault or fear of sexual assault by a fellow service member or superior is covered under the definition, in your view, of hostile military activity, then why do you, as the Chief pointed out, need the subparagraph 5? Well, it's not a question of whether you need it, Your Honor. It's a question of whether or not that is available. It is available and it is applicable. The provisions of subparagraph 5 are more stringent, are requiring corroboration by individuals. So you're saying 3 and 5 cover the same things. If they cover the same things, obviously, one would opt for 3 rather than 5 because, I agree with you, they're less stringent. But why would anyone draft something, draft two separate provisions that cover the same thing and provide for different avenues of relief? Does that make any sense to you? Well, I believe it does, Your Honor, because if you look at the regulatory history, the evolution of 3 came out of cases from the Veterans Court which required, based upon manual provisions within the VA's adjudication manual, special treatment for persons who had been victims of sexual assault in the service. The VA, then, has most recently, in July of 2010, promulgated this regulation that provides for specific circumstances related to a fear of a hostile military or terroristic activity and lowers the evidentiary burden even further than that which is provided under 5. The Veterans Court in Acevedo indicated that they saw no reason that you could not take advantage of both provisions of the VA's regulation. Well, Acevedo is a decision that you cite in your favor, right? Yes, Your Honor. Did you tell us anything about this sentence from Acevedo? The court concludes that the reduced evidentiary burden of F3 is not applicable to the appellant's sexual assault claim. Did you mention that in your brief? No, Your Honor. That's how Acevedo was applied in that case. Not applicable to the sexual assault F3. Did you tell us about that in your brief? No, Your Honor. I did not. Is that sanctionable? I hope, Your Honor, it's not any intention on my part to deceive the court in that regard. To not mention something directly on the issue of which paragraph applies? Not applicable if you don't mention it. Well, Your Honor, it seems to me that when discussing the broader questions of whether or not both provisions are applicable and available to a veteran, whether they were available or not. And the court says it's not. They said it was not. And you cite something earlier which said it had been proposed, but then the court said it's not. And in that case, Your Honor, they actually considered and applied it. In this case, the court said that no part of subparagraph 3 was applicable to sexual assault cases. The legal question in this case is whether or not that is a correct interpretation of the VA's regulation. These regulations should not be viewed as exclusive. The whole nature of the evolution of the VA's regulations considering claims for post-traumatic stress disorder is to provide a more liberal opportunity for veterans to be able to establish service connection. But isn't that the more liberal opportunity, Mr. Carpenter, in certain circumstances? That's correct. For example, I'm sure the government would agree that if an individual is captured and subjected to, in combat, subjected to some kind of assault or sexual assault or whatever, while a prisoner of war, that he or she would then fall within F3. No, actually, Your Honor, they fall within a separate paragraph of the F series, which provides for both combat presumption and for prisoner of war. And if either of those two... Is that F4? I believe it's F2 and F4. Prisoner of war is F4 and combat is F2. F1 provides for the circumstance in which the veteran, while on active duty, was diagnosed with post-traumatic stress disorder and that post-traumatic stress disorder diagnosis was related to his military service. The point here, Your Honor, is that we have an opportunity for a veteran to take advantage of an even lower evidentiary threshold. And what the ruling below does is that it precludes that applicability. And I'm asking this Court to interpret this regulation to include within a fear of a hostile military activity a service assault or, excuse me, an in-service sexual assault by a superior. That is the quintessential hostile military activity. It is an activity by one military personnel against another. Well, it's hostile in the sense that it's unwanted, but at the same time, I looked at the Federal Register provision that I think is cited in the briefs and the whole thrust of it is relating to hostile military action. In other words, a foreign foe or a terrorist or an insurgent. But with respect, Your Honor, regulatory history also talks about the fact that this is a very broad regulation and it applies to the nature of the psychological fear that is produced by an event in service. And that that event is not limited to something that is experienced by the veteran, but something that is even observed in the threat of injury to another. The reason for the different burden is that the fifth paragraph requires some corroboration, which, of course, requires some corroboration. Service records may corroborate the account. You need to have something beyond an allegation because sexual assault is an issue which involves particularly sensitive matters. We want them corroborated, not just alleged. With respect, Your Honor, if you're talking about paragraph five, paragraph five is in fact predicated on the ability to make that corroboration through other than service records. And it's based upon the notion and the acknowledgement by the VA that sexual assault is both underreported and not reported. It's the nature of that incident that is corroboration. But corroboration is what you're lacking and it is what you want to escape in this instance, isn't it? No, Your Honor. When you have military history, see military action or terrorist action as in three, it tends to be notorious. It tends to be reported even in the newspapers. We don't need corroboration for that kind of stressor incident. But with sexual assault, it can be alleged or perceived when it may not even have occurred. And that has something to do with the need for corroboration, doesn't it? No, Your Honor. No, Your Honor. There's no reason for corroboration at all? Not under F-3. In fact, F-3... But the issue is whether it falls under F-3. That doesn't answer the question. Well, I was trying to direct the question to whether or not corroboration is required by F-3. Of course not. We're talking about the reason for it being in F-5. I'm saying that it's not even necessary in F-3. Those are notorious events. When a terrorist blows up an office building, we all know about it. But, Your Honor... When someone commits sexual assault, it often needs some corroboration. With due respect, Your Honor, F-3 deals not with the type of incidents that you are describing because it allows corroboration on the basis of lay testimony. And that lay evidence alone by the victim can be the basis for the award of service connection. Excuse me, Your Honor. In F-5, F-5 deals with corroboration from non-Service Department record sources. Clergy members, family members, a mental health professional, a person that the veteran may have consulted. So it is not any direct corroboration. But it is, in fact, indirect corroboration. I want to just return to one more thing before you finish. You don't think that there's any problem with your not telling us the full content of the Alcibado opinion, right? If there is a problem, Your Honor, I apologize. That was not my intent. I did not... It's just such an oversight, Mr. Carpenter. To not tell us that this opinion stands for precisely the opposite of what you cited for is a pretty large mistake, isn't it? It was not a mistake of intent. I had no intention of deceiving this Court. I apologize. I should have made clear indication as to what the specific application was. As I saw it, this case was about whether or not this provision is or is not applicable. Mr. Carpenter, just before you stand, one final point on whether F-3 covers here. The end of it says, Fear of hostile military or terrorist activity means the veteran experienced, witnessed, or was confirmed with an event or circumstance that involved actual or threatened death or serious injury. And then it goes on and gives examples. And all of those examples are combat situations. Grenades. A sniper fire. I understand that, Your Honor, but if you read the regulatory history, it explains clearly that those examples are not intended to be exclusive. Well, I understand they're not intended. No, that's a fair point. But, generically, certain types of events are not mentioned here, but they all generically relate to what anyone would think of as hostile military combat. Right. But those are situations where there is no one to corroborate. There is no service record that corroborates that incident. And no matter how notorious that incident may or may not be in reality, there was no record of it. And so what we're dealing with in F-5 is the precise situation that a victim of sexual assault finds themselves in, in which there is no record of that incident. So that's what makes sexual assault something that's covered by hostile military activity? Yes, Your Honor. When it is one military member, it's not another military member. Thank you, Mr. Carpenter. Mr. Grimaldi. Thank you, Your Honor. Good morning. Thank you, Your Court. Your Honor, I'd just like to touch on two points that were raised. First, when we're talking about hostile military or terrorist activity, we're not talking about a U.S. service member who is acting hostile towards somebody else. We're talking about a military or terrorist activity to reach a military or terrorist goal or object, perpetrated on our soldiers in the Middle East, or, excuse me, around the world. So this does not cover a situation in which we have one service member assaulting a second service member. It covers simply hostile military and terrorist activity. And I have seen the plain language of effigy in the second sentence, as Your Honor has discussed earlier. And I just wanted to touch on, Your Honor... Is it conceivable or are there conceivable situations in which that could encompass sexual assault, not by fellow service members, but by the enemy? It's possible, Your Honor. It could touch on such a situation. 3.304F covers a lot of different types of PTSD. Oftentimes, you know, if it's a POW situation, it would be covered by 2. If it's... That's 4, isn't it? 4. Sorry, Your Honor. Yes. If it's during combat, it might be covered by 2. But it's conceivable there would be a situation in which a hostile military attacks somebody else for sexual assault, and it could fall under F3. Now, Mr. Carpenter tells us that hostile activity is that, you know, sexual assault is covered within that. I mean, you know, in the general... In our general conversation, I mean, I guess we could use the word hostile to describe some sort of, you know, sexual assault, even if it doesn't involve the enemy. Correct, Your Honor. I mean, the vernacular of hostile, I'm positive that sexual assault would fall under that. Anyone who's been a victim would consider that attactive and hostile towards them. But hostile military or terrorist activity is defined as a phrase in subsection F3, not by individual words. And that's what Mr. Paul is doing. He's defining it as, well, my superior was hostile, and he was in the military, so therefore it's hostile military activity that occurred. And that is simply not the plain language of subsection F3. And just to touch on the regulatory history here, Your Honors, why is there lay testimony? There has been some discussion of part of a regulatory history, but also there's 74 Federal Register 42617. And, Your Honors, that discusses why this subsection was enacted. And basically, there are a lot of individuals who are coming back from Iraq and Afghanistan who are suffering from PTSD and are not pinpointing an exact situation in which they had this one event that caused them to have this fear and have the symptoms of PTSD, but it's rather the situation that is occurring over there, the constant fear of where the enemy is, where is the front line. And some of the, just to quote the Federal Register for a moment here, those stressors include constant vigilance against unexpected attack, the absence of a defined front line, the difficulty of distinguishing enemy combatants from civilians, and the ubiquity of improvised explosive devices. And this came from a study by the National Academy Institute of Medicine that the VA looked at and then put together a subsection F3. So, Your Honors, that is why subsection F3 is there. It is not to cover in-service sexual assault. The plain language of F5 covers that. So, Mr. Hall has had an opportunity to show that he has suffered from PTSD, and Mr. F5 has to report him for appraising. For those reasons, Your Honors, we respectfully request that this Court affirm the decision of Veterans Court. Thank you, Mr. Grimaldi. Mr. Carpenter, you have a minute. I'd just like to pick up with the last comment made by the government about Mr. Hall's diagnosis. Mr. Hall was diagnosed with post-traumatic stress disorder related to his military sexual assault in a VA compensation and pension examination. The only reason that he is not receiving service-connected compensation is because he does not have the additional corroboration required by FIVE. If he gets the benefit of THREE, his lay testimony is sufficient to provide that corroboration. It is therefore critical to determine whether or not in this case, or excuse me, in a case of sexual assault, an individual is entitled, when attacked by another service member, that that does represent a fear related to a hostile military activity. Thank you very much, Your Honors. Thank you.